# 12-5093-cr

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

KEVIN L. DONALDSON,
*Defendant - Appellant.*

---

**REPLY BRIEF FOR APPELLANT**

---

**On Appeal From The United States District Court
For The Western District Of New York
09-cr-00321 (Arcara, R.)**

---

WILLIAM J. HOCHUL, JR., ESQ.            JAMES A. COHEN, ESQ.
AARON J. MANGO, ESQ.                    MICHAEL W. MARTIN, ESQ.
United States Attorney's Office         Lincoln Square Legal Services, Inc.
Western District of New York            Fordham University School of Law
138 Delaware Avenue                     33 West 60th Street, Third Floor
Buffalo, New York 14202                 New York, New York 10023
(716) 843-5700, ext. 15882              (212) 636-6934
*Attorneys for the Appellee*            *Attorneys for the Appellant*

# **TABLE OF CONTENTS**
**SUMMARY OF ARGUMENT** ...........................................................................1

**ARGUMENT** .....................................................................................................2

    I.     COUNSEL'S PERFORMANCE CONSTITUTES INEFFECTIVE ASSISTANT OF COUNSEL ...........................................................2

        A. Counsel Did Not Adopt A Trial Strategy of Portraying the Witnesses As Being Coached ..............................................................2

        B. A *Per Se* Rule of Reversal Applies Under *United States v. Cronic*.....3

    II.    TESTIMONY REGARDING PAST RAPES SHOULD NOT HAVE BEEN ADMITTED AT TRIAL ...............................................................6

    III.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT MR. DONALDSON'S CONVICTION FOR WITNESS TAMPERING .........8

    IV.   THE PROSECUTION'S ARGUMENTS REGARDING MR. DONALDSON'S *PRO SE* BRIEF ARE EXTRANEOUS .......................9

**CONCLUSION** ................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Alaska*, 415 U.S. 308 (1974) .................................................................. 4

*Martina v. Rock,* No. 09-CV-06345T, 2011 U.S. LEXIS 49801

    (W.D.N.Y. May 10, 2011) .................................................................................. 5

*Old Chief v. United States*, 519 U.S. 172 (1997) ..................................................... 7

*United States v. Ajmal*, 67 F.3d 12 (2d Cir. 1995) ................................................... 5

*United States v. Cronic*, 466 U.S. 648 (1984) .......................................................... 4

*United States v. Davis*, 624 F.3d 508 (2d Cir. 2010) ............................................... 7

*United States v. Schneider* No. 10-29, 2010 U.S. Dist. LEXIS 91774

    (E.D. Pa. Sept. 3, 2010) ..................................................................................... 8

## **SUMMARY OF ARGUMENT**

Mr. Kevin L. Donaldson submits this brief in response to the Prosecution's brief submitted on April 16, 2014. The Prosecution argues that the failure of Mr. Donaldson's trial counsel ("Counsel") to object to excessive leading and improper questioning was strategic. The record, however, shows Counsel to be ineffective—not strategic—thus failing to subject the Prosecution's case to meaningful adversarial testing. As such, prejudice is presumed, and a *per se* reversal of Mr. Donaldson's conviction is warranted here.

The Prosecution argues that it was proper for the District Court to admit evidence of past sexual assaults committed by Mr. Donaldson to establish a pattern of behavior. This evidence should have been excluded, however, as it was unfairly prejudicial and unrelated to the Indictment's charges.

The Prosecution argues that L.W. was clear in her belief that Mr. Donaldson was attempting to influence her testimony. While that may have been L.W.'s "belief," the record reflects a far less certain L.W., who equivocated, despite the Prosecution's consistent and improper leading on this point. For these reasons, the judgment against Mr. Donaldson should be vacated.

# ARGUMENT

## I.
## COUNSEL'S PERFORMANCE CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

The record demonstrates that Counsel did not attempt to portray M.F., L.W., and C.F. as coached witnesses, as the Prosecution argues, but rather, flailed in subjecting the Prosecution's case to meaningful adversarial testing.

### A.    Counsel Did Not Adopt A Trial Strategy of Portraying the Witnesses As Being Coached.

The Prosecution claims that the record reflects that Counsel "embarked on a strategy of portraying the victims as being coached or otherwise influenced by the government in remembering certain events," and "vigorously challenged the credibility of each witness and questioned them as to why they did not immediately disclose the rapes, why they continued to go on the trucking trips, and why they continued to interact with Donaldson after being sexually assaulted by him." (Prosecution Brief at 17). The Prosecution cites to twenty pages in the record in support of its assertion.[1] *Id.* Considering that the trial transcript covers about 700 pages through the end of C.F.'s testimony during the Prosecution's case in chief, support found in only twenty pages does not suggest the "vigorous challenge" the Prosecution describes. A handful of questions do not evince a trial strategy.

---

[1] Nine of those pages consist of Counsel's cross examination of M.F., nine are selected from Counsel's cross examination of L.W., and only two pages are selected from Counsel's cross examination of C.F. *Id.*

2

Contrary to what the Prosecution maintains, and as evidenced by Counsel's closing arguments, Counsel did not attempt to portray the witnesses as coached: during his one-hour closing argument, Counsel makes only one passing reference to the notion that the FBI helped "package" the witnesses' story, and no reference to the Prosecution's coaching of the witnesses. (Donaldson Brief at 53; Joint Appendix ("JA") at 1046, 1029-60).[2] Counsel simply asserted that M.F., L.W., and C.F. were all lying in making accusations against Mr. Donaldson. (JA at 1054-59). Counsel asked the jury to consider the witnesses' credibility, and to look to the numerous recantations and inconsistencies in their stories. (JA at 1037-38, 1042-50). Counsel's rationale for the continued lying was the fact that the girls did not like Mr. Donaldson because he did not always get along with them and had strict rules about cleaning. (JA at 1051, 1055-59). Counsel made no attempt to tie what the Prosecution claims to be Counsel's "strategy"—allowing the Prosecution to spoon feed the witnesses—into the closing, which comes as no surprise, because there was no such strategy.

**B.     A *Per Se* Rule of Reversal Applies Under *United States v. Cronic*.**

As stated above, the handful of questions that Counsel asked on cross examination to challenge the witnesses' credibility does not evince a trial strategy of portraying the witnesses as coached. Counsel's consistent failure in allowing

---

[2] The United States Attorney's Office for the Western District of New York consented to the contents of the Joint Appendix on December 19, 2013.

3

the Prosecution to elicit its case theory through leading questions instead demonstrates a failure to meaningfully challenge the Prosecution's case. The United States Supreme Court has stated that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself *presumptively unreliable*." *United States v. Cronic*, 466 U.S. 648, 659 (1984) (emphasis added). In these circumstances, "[n]o specific showing of prejudice [is] required." *Id.* (citing *Davis v. Alaska*, 415 U.S. 308 (1974)).

The Prosecution suggests that since Counsel made some 70 objections throughout the course of trial, Counsel could not have been ineffective. (Prosecution Brief at 16-17). The Prosecution fails to place this number in context, however, ignoring the fact that the trial spanned seven days and generated over 700 pages of transcript for the Prosecution's case in chief. Moreover, the number of times Counsel objected is irrelevant. Counsel objected to only a small *proportion* of the Prosecution's improper questions, allowing countless others to be asked. Further, the focus of this Court's inquiry should be on the materiality of the inflammatory and leading questions to which counsel failed to object. The questioning was so egregious that the District Court felt compelled to reprimand the Prosecution for its tactics on more than one occasion. (JA at 377, 421-22). In context, it is clear that Counsel hardly subjected the Prosecution's case to the close

4

scrutiny and meaningful adversarial testing that were due, which was made all the worse by the fact that most of the damning "evidence" in the case was contained in the witnesses' affirmative responses to the Prosecution's leading questions. For example, by the Prosecution:

> Q: Okay. So I want you to tell the jury why you decided—knowing that you've obviously been raped in Mount Morris, the trucking trips, you still chose to move into the household, and is it fair to say that was because you didn't want your family to be split up?
> A: My sisters were more important than I was to myself. So if that meant I had to move with them to keep them safe, then that's what I would do, and I would do it over again.

(JA at 259). Counsel did not object to this, or to many other questions in which the Prosecution provided rationalizations for the witnesses' irrational behavior.

The Prosecution argues that Rule 611(c) of the Federal Rules of Evidence provides "words of suggestion, not command," *United States v. Ajmal*, 67 F.3d 12, 16 (2d Cir. 1995) (internal citation omitted), and that leading questions may be "necessary to develop the witness's testimony." (Prosecution Brief at 18). While some courts have rationalized an attorney's failure to object to persistent leading questioning, they have done so under vastly different circumstances than are present here. *See, e.g., Martina v. Rock,* No. 09-CV-06345T, 2011 U.S. LEXIS 49801, at *24 (W.D.N.Y. May 10, 2011) (finding that improper questioning of 11-year-old victim was not unreasonable due to the "inherent challenges associated with examination of child witnesses"). Unlike the witness in *Martina*, all three

5

witnesses who testified against Mr. Donaldson were adults at the time of trial. (JA at 160-61, 329, 675). They had undergone various life experiences such as marriage, divorce, raising children, and spending time in prison. (JA at 140-41, 371, 378). The circumstances do not justify the Prosecution's excessive use of leading questions and Counsel's failure to object.

The Prosecution maintains that even if Counsel was ineffective, there was no prejudice in light of the "overwhelming evidence" of Mr. Donaldson's guilt. (Prosecution Brief at 18-19). However, when the "overwhelming evidence" comes through the content and phrasing of the Prosecution's leading questions, thus effectively testifying on behalf of the three witnesses at trial, this Court should have misgivings. The Prosecution presented no DNA evidence, no medical reports of sexual abuse or injury, and no expert testimony. Without the spoon fed testimony of these witnesses, which went unchallenged by Counsel, the evidence against Mr. Donaldson would have been insufficient to support a jury's guilty verdict.

## II.
## TESTIMONY REGARDING PAST RAPES SHOULD NOT HAVE BEEN ADMITTED AT TRIAL.

Rule 403 should have precluded testimony regarding three rapes not charged in the Indictment. The admission of the testimony unfairly prejudiced Mr.

Donaldson, and far outweighed its probative value. (Donaldson Brief at 30-37); *see United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010).

The Prosecution claims that the January 2009 rape of M.F. – the subject of Mr. Donaldson's state conviction – details the "final chapter" of the story of Mr. Donaldson's sexual misconduct with M.F. (Prosecution Brief at 21). The Prosecution argues that the presentation of this evidence was necessary to meet the jury's expectations, quoting a passage of *Old Chief v. United States* that describes the need for prosecutors to connect the dots when jurors "hear a story interrupted by gaps of abstraction" in the form of a stipulation or admission. 519 U.S. 172, 189 (1997); (Prosecution Brief at 22-23). Since there were no stipulations or admissions in this case, there were no "gaps" in the story presented to the jury, and therefore the rationale of *Old Chief* does not apply.

Further, the Prosecution's questioning regarding the January 2009 rape went beyond serving a gap-filling function; rather than merely informing the jury of why M.F. waited to disclose the rapes, the Prosecution reviewed the past crime in graphic, unnecessary detail, resulting in unfair prejudice to Mr. Donaldson. The Prosecution argues that "a basic issue in any rape case is understanding the circumstances surrounding the victim's disclosure of the rape." (Prosecution Brief at 23). The mere fact that Mr. Donaldson was convicted in 2009 would have been sufficient to inform the jury as to why M.F. waited to disclose the rapes charged in

7

the Indictment at that time. Instead, the Prosecution spent almost half of its direct examination of M.F. discussing the details of uncharged rapes and the 2009 conviction. (Donaldson Brief at 4-5). This process was unfairly prejudicial.

Moreover, the Prosecution argues that testimony regarding the alleged rape of M.F. in the summer of 2004 and the alleged rape of L.W. in the summer of 2003 bore directly on Mr. Donaldson's "propensity to assault M.F. [and L.W.]" and established a "long-standing" pattern. (Prosecution Brief at 25-26). The jury, however, was forced to listen to unnecessary and excessive details about alleged rapes that were never charged. The Prosecution spent more time discussing alleged prior assaults than it did the charged acts in the Indictment. (Donaldson Brief at 36-37). The testimony was cumulative and unduly prejudicial. *See United States v. Schneider* No. 10-29, 2010 U.S. Dist. LEXIS 91774 (E.D. Pa. Sept. 3, 2010).

### III.
### THE EVIDENCE WAS INSUFFICIENT TO SUPPORT MR. DONALDSON'S CONVICTION FOR WITNESS TAMPERING.

The Prosecution claims that "[d]uring her testimony, L.W. was clear in her belief that Donaldson was attempting to influence her testimony by repeatedly writing to her that nothing happened on the trucking trips, that other relatives were lying, and that Donaldson was going to call her to the witness stand to say that nothing happened." (Prosecution Brief at 30). The Prosecution highlights 11 pages

of the record—over a 125 page spread—in support of this proposition. (JA at 395-520). The direct examination, however, is rife with L.W.'s statements that the letters made her "confused," and that she did not have a particular opinion on the purpose of these letters. (JA at 412). For example, the Prosecution asked:

> Q: How did you feel when he said I need to put you and C. on the stand at my trial? What did you think when he said that to you?
> A: I really didn't know what to think, and like I said like the last time, why is C. being brought up, why is all these other—Bonnie, why was she brought up? I really didn't understand it.
> Q: Okay. The question really is how did you feel about him saying you were going to be going on the stand? What did that make you feel?
> A: I really had—don't know. I just—I didn't know what to think. I didn't know what to say. I didn't know—
> Q: Were you looking forward to it?
> A: No, absolutely not.

(JA at 420-21). The Court warned the Prosecution to stop leading the witness shortly thereafter. (JA at 421-22). L.W.'s inability to both sort through her feelings regarding the correspondence with Mr. Donaldson, as well as articulate those feelings on the stand, contradicts the Prosecution's notion that she was clear in her testimony that Mr. Donaldson was attempting to improperly influence her.

## IV.
## THE PROSECUTION'S ARGUMENTS REGARDING MR. DONALDSON'S *PRO SE* BRIEF ARE EXTRANEOUS.

On March 20, 2014, the Second Circuit considered and denied Mr. Donaldson's *pro se* motion to file a *pro se* brief. The Prosecution's arguments

9

addressing any points raised in Mr. Donaldson's *pro se* submission to the Court are therefore extraneous.

## CONCLUSION

For the foregoing reasons, Mr. Donaldson respectfully requests that the judgment against him be vacated and the case be remanded to the District Court for appropriate further proceedings.

Dated: April 30, 2014

Respectfully Submitted,

*[signature]*

James A. Cohen, Esq.
Lincoln Square Legal Services, Inc.
33 West 60th Street, 3rd Floor
New York, New York 10023
(212)-636-6822
*Attorney for Defendant-Appellant*

<u>Dean's Fellow</u>
Giuliana Graham
<u>Legal Interns</u>
Erik Mass
Meaghan Millan
Kaitlin Wood